STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.B.-1 and D.B.-2**

**No. 20-0820** (Boone County 19-JA-85 and 19-JA-86)

## MEMORANDUM DECISION

Petitioner Mother W.B., by counsel Kassie N. Ball, appeals the Circuit Court of Boone County's September 10, 2020, order terminating her parental rights to D.B.-1 and D.B.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, L. Scott Briscoe, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, terminating petitioner's parental rights when there were closures and limitations due to the COVID-19 pandemic, and terminating petitioner's parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition against petitioner due to her lack of stable housing, drug abuse, and acts of domestic violence with various partners. After receiving referrals that the children were unsafe, filthy, and medically neglected, the DHHR investigated by making numerous visits to petitioner's various homes, none of which were appropriate. One home lacked working utilities and was filthy, and another home had owners with substantiated Child Protective Services ("CPS") and drug trafficking histories. Throughout the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we refer to them as D.B.-1 and D.B.-2, respectively, throughout this memorandum decision.

1

months of investigation, CPS workers brought food to the family and observed the children to be dirty with one child in dire need of dental care. The workers also observed petitioner to be under the influence of drugs on one visit and with a bruised hand at another visit. Eventually, petitioner agreed to obtain independent housing with Department of Housing and Urban Development ("HUD") assistance but failed to do so. Also, the DHHR searched petitioner's case history and found that she had substantiated claims of drug abuse in 2015, but that the case was closed due to noncompliance and petitioner's moving to another county. The DHHR concluded that petitioner's living arrangements threatened the children's safety, petitioner was unable or unwilling to sufficiently manage a household and the children's needs, she exercised poor decision making that lacked forethought and planning, and her toxic relationships and substance abuse impacted her ability to parent the children. Thereafter, petitioner waived her preliminary hearing, and in June of 2019, the circuit court granted her a preadjudicatory improvement period.

A series multidisciplinary team ("MDT") meetings and status hearings were held from July to September of 2019 to address petitioner's progress with her preadjudicatory improvement period. At the first MDT, petitioner explained that she was homeless and could not find a rental property due to her history of domestic violence with multiple partners. The MDT members agreed that petitioner should go to a homeless shelter in Charleston and attempt to relocate there for better housing opportunities. Petitioner also claimed to have last used drugs three years prior. Petitioner failed to attend the September status hearing and failed to stay in contact with the DHHR regarding her whereabouts and progress. Petitioner's assigned case worker learned that petitioner moved to Lincoln County, West Virginia. As a result, the circuit court set the matter for adjudication.

The circuit court held an adjudicatory hearing in late September of 2019. The DHHR presented evidence in accordance with the petition. It further reported that no services were given to petitioner because she failed to stay in contact with her caseworkers and that the children were doing much better in placement. Upon hearing the evidence, the circuit court adjudicated petitioner as an abusing parent. Petitioner filed a motion for a post-adjudicatory improvement period, which was denied due to her general noncompliance.

Over the next few months, several status hearings and MDT meetings were held. During this period, petitioner was in a vehicle accident. However, it is unclear from the record if she sustained any injuries or had other issues that impacted her ability to attend hearings. At the MDT held in October of 2019, petitioner tested positive for methamphetamine and admitted that she relapsed. The same month, the DHHR submitted a court summary stating that petitioner had again moved in with another man in another county, but that the DHHR arranged transportation for petitioner to drug screen and attend hearings and MDT meetings. At the status hearing, petitioner moved for a post-dispositional improvement period, which the circuit court granted. In mid-November of 2019, the DHHR made referrals for services, such as parenting and adult life skills classes and transportation, but petitioner failed to keep her appointments and the DHHR worker's last contact with petitioner was in late November of 2019. Providers attempted to reschedule services with petitioner, but petitioner failed to respond, which resulted in the termination of services and the DHHR's request to terminate petitioner's post-dispositional improvement period.

In January of 2020, petitioner was admitted into and completed a twenty-eight-day inpatient substance abuse program. At a status hearing in February of 2020, petitioner was not

present, but her counsel represented that she transferred to a sober living house in Cabell County, West Virginia. At the next status hearing in July of 2020, the DHHR reported that petitioner's post-dispositional improvement period expired in April of 2020 and argued that petitioner had not completed the terms of the improvement period as she failed to obtain employment or housing, failed to complete long-term sober living, and only sporadically complied with parenting and adult life skills sessions. Petitioner requested an extension of her improvement period arguing that she was laid-off due to the COVID-19 pandemic. The circuit court then set the matter for disposition.

The circuit court held a final dispositional hearing in August of 2020. The DHHR presented the testimony of several witnesses. A service provider for parenting and adult life skills resources testified that services were put in place for petitioner while she was at sober living treatment in Huntington, West Virginia, but that petitioner never returned e-mails or phone calls to set up sessions. A transportation provider testified that she was able to take petitioner to only one drug screen in November of 2019 because petitioner failed to stay in contact with her to arrange transportation pick up times and locations. The DHHR case worker testified that petitioner did not complete her long-term sober living treatment as she left the program early and had not obtained housing. The case worker also stated that petitioner's communication was sporadic as she had changed her e-mail address and phone number three times during the course of the proceedings. The case worker also stated that four months after the expiration of her post-dispositional improvement period, petitioner requested assistance with obtaining HUD housing in the Huntington area—merely weeks before the dispositional hearing. She further explained that petitioner lacked her social security card and birth certificate and was directed back in November of 2019 to obtain these documents to secure appropriate housing. Furthermore, petitioner told the MDT members in November of 2019 that she had an appointment to obtain a HUD voucher for housing assistance, but the worker stated that she did not "know what happened with that." On cross-examination, the worker agreed that the lockdowns due to the COVID-19 pandemic did not occur until March of 2020[2] and that petitioner had allegedly sought her identity documents since November of 2019—four months prior. The worker also stated that petitioner missed her last two visits despite the visits being held virtually and that previous calls were ended early because petitioner had an unknown man attend. Most importantly, the worker stated that petitioner never obtained suitable housing throughout the case and, therefore, no worker had inspected a home to check its suitability for the children. Additionally, she testified that the children had lived with the foster parents for over a year and had bonded with the parents calling them "mom" and "dad."

Next, the foster mother testified that when the children first arrived, four-year-old D.B.-2 was not potty-trained and was nonverbal and that seven-year-old D.B.-1 was unable to eat solid foods and required dental surgery. She also stated that supervised visits did not begin until February of 2020, and that petitioner missed several in-person visits and was inconsistent with phone visits. Petitioner testified that she allowed a housing voucher to expire and relapsed in November of 2019, which led to her being "MIA missing in action." She stated that she left her sober living program a few days early in April of 2020 and obtained a job which she worked for one month until she was laid-off due to the COVID-19 pandemic. Petitioner then presented proof

---

[2]Governor Jim Justice implemented a mandatory Stay-At-Home Executive Order on March 24, 2020, in an effort to curb the rise of COVID-19 infections. The Order was lifted on May 4, 2020.

that she had submitted forty job applications since she lost her job in May of 2019 and that she was now currently employed. Petitioner requested another two months to obtain housing. The guardian argued in favor of the termination of petitioner's parental rights and stated that despite petitioner receiving two improvement periods and having in excess of four additional months, she failed to complete the goals of her post-dispositional improvement period. He further argued that returning the children to petitioner would be detrimental to their welfare.

The circuit court concluded that petitioner had not responded to or followed through with recommended treatment for her drug addiction and had demonstrated "an inadequate capacity to solve the problems of abuse or neglect on her own or with help." Based on the evidence presented, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by its order entered on September 10, 2020. Petitioner appeals the dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights by finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. According to petitioner, due to the progress made during her post-dispositional improvement period, she showed that she has the adequate capacity to solve the problems of abuse and neglect. She also states that she consistently visited with the children throughout her post-dispositional improvement period and maintained a bond with them. Petitioner also argues that the circuit court should have given her more time to obtain appropriate housing "due to the COVID-19 pandemic closing and limited hours of government offices that help with housing assistance." Petitioner contends that the "pandemic imposed an unreasonable burden and made some actions effectively impossible, including [p]etitioner's ability to find an appropriate

---

[3]Proceedings against the children's respective fathers remain ongoing. The permanency plan for the children, barring reunification with the fathers, is adoption by their foster family.

4

home." Finally, petitioner argues that the circuit court failed to employ a less-restrictive dispositional alternative.

However, the evidence introduced during the proceedings below supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given her failure to complete the terms of her post-dispositional improvement period and follow through with her case plan. While it is true that petitioner obtained employment a few days before the final dispositional hearing, she remained unable to reunify with the children for lack of suitable housing. Further, petitioner's argument concerning the COVID-19 pandemic is without merit as petitioner had known since November of 2019 that she needed to obtain her birth certificate and social security card to obtain HUD housing—well before the governor's lockdown order. Further, petitioner admitted that she ceased all contact with the DHHR when she relapsed and allowed a housing voucher to expire. Moreover, petitioner moved between three different counties during these proceedings and did not decide her permanent residential area until two weeks before her dispositional hearing when she requested the DHHR's assistance to obtain HUD housing in Cabell County, West Virginia. Petitioner ignores these shortcomings and instead focuses on the fact that she lost her prior employment due to the COVID-19 pandemic, and thus her financial means to put down a security deposit for an apartment. However, as had been discussed at MDT meetings and at prior hearings, the DHHR would have assisted petitioner with HUD housing applications but petitioner failed to obtain the proper identifying documents.

Although the lack of suitable housing was a major issue for petitioner, it was not the only issue that she needed to address. Petitioner eventually succeeded in finishing a twenty-eight-day drug treatment program but left the sober living treatment program early. She also failed to consistently attend her parenting and adult life skills classes and ultimately did not receive completion certificates for those classes. As such, we disagree with petitioner, and find that although she made some progress during her post-dispositional improvement period, petitioner failed to show that she was able to solve the problems of abuse and neglect on her own or with help. Accordingly, we find no error in the circuit court's conclusion that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Additionally, while it is true that petitioner's visitations with the children were mostly consistent during her post-dispositional improvement period, petitioner exercised visitations for only the last five months of the total thirteen months that the children were placed with the foster family. The record also shows that some visits were cut short due to petitioner having an unknown man participate. Finally, the children could not have been returned to petitioner's care as she lacked stable housing and had not proven to the circuit court that she had fully addressed her drug addiction by completing a long-term program. As such, we find no error in the circuit court's determination that the termination of petitioner's parental rights was necessary for the children's welfare.

Further, petitioner takes issue with the fact that the circuit court failed to grant her an additional two months to obtain housing. We have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part. (citation omitted). Regarding the circuit court's alleged failure to implement a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

Because the proceedings regarding the fathers remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[ ] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and

6

discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton